A90A1498. HOUSE v. THE STATE.
(399 SE2d 262)

COOPER, Judge.

Appellant was convicted by a jury of conspiracy to commit murder and appeals from the denial of his motion for new trial.

At trial, the State called as a witness a co-defendant in this case, Valdas Montgomery, who had pled guilty but had not been sentenced. Montgomery testified that he and his brother went over to another co-defendant's house where they were all drinking beer; that when they arrived appellant was in the bedroom, but at one point all of them, including appellant, were in the living room talking; that the other co-defendants, not including appellant, stated that they needed to "take care of" a Marcus Anderson; that one of the co-defendants

said that the job was to kill Marcus Anderson; and that Montgomery was paid $400 and some cocaine at that time to kill Anderson and $40,000 worth of cocaine was to be paid to Montgomery when the job was done. Montgomery first stated that he could not recall if appellant was in the room when the murder was being discussed but later testified that appellant was present when the conversation occurred. Montgomery did testify that during the conversation, appellant left the room and returned with appellant's gun in one hand and shells in the other hand; that he was not sure which of the other co-defendants actually handed him the gun, but that he got the gun which was to be the murder weapon. Montgomery testified that he did watch for Anderson on several occasions but finally abandoned the plan and went to the police. The State also called two police officers as witnesses who testified that they had interrogated appellant upon his arrest and that he had given three statements on his role in the conspiracy. Appellant's statements corroborated Montgomery's testimony; appellant admitted hearing and being present during the discussion of the murder of Marcus Anderson and stated that at the request of another co-defendant, he gave his gun to that co-defendant who then gave the gun to Montgomery. The court held a *Jackson-Denno* hearing prior to admitting the statements and determined, based on the testimony of the officers and appellant, and on a waiver and acknowledgment signed by appellant, that the statements were voluntarily given, that appellant was advised of his rights and he knowingly and intelligently waived them and that there was no promise, threat or coercion made to appellant to induce the statements. The officers testified at trial that the statements appeared to be given freely and voluntarily, that appellant was advised of his rights and that no one offered him any hope of benefit or reward or threatened him in order to obtain the statements.

Appellant testified at trial that he was in the bedroom during the co-defendants' discussions and was not aware of the plan to kill Anderson; that one of the co-defendants, a very good friend of his, asked him for his gun and appellant got the gun and the shells and put them on a cabinet; that appellant did not know what the gun was to be used for; that he did not see who picked up the gun and that he would not have given anyone his gun if he knew they intended to kill someone with it. Appellant testified at the *Jackson-Denno* hearing and at trial that during his interrogation by the officers, he was told that if he did not cooperate with them he would get a 30-year sentence. He said that the officers mentioned pending drug charges against him, and appellant testified that he had been working undercover with one of the officers on these drug charges and that his hearing dates had been continually postponed. Appellant stated that his first statement was torn up by the officers and that they told him

what statements they had received from Montgomery. Appellant said that, in fear of a 30-year sentence, he finally gave the statements introduced at trial. At trial, the officers denied appellant's allegations. A co-defendant on trial with appellant testified that while in jail, he received notes from Montgomery indicating that Montgomery had fabricated the story of the conspiracy to get back at him for incidents in the past.

1. Appellant's first enumeration asserts that the court erred in denying appellant's motion for directed verdict and motion for new trial because the evidence was insufficient to support the verdict. " '(A) motion for directed verdict in a criminal trial should only be granted where there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law.' [Cit.]" *Ely v. State*, 192 Ga. App. 203 (6) (384 SE2d 268) (1989). A careful review of the record in a light most favorable to the jury's verdict reveals conflict in the evidence and further " 'reveals ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of (the offense) charged.' [Cits.]" Id. citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). There was no error in denying the directed verdict or the motion for new trial.

2. Appellant next contends that the court erred in admitting appellant's statements made to the police because they were made in hope of a benefit. The officers denied appellant's allegations regarding the inducements to make the statements. "The trial court's findings regarding factual determinations and credibility when considering the admissibility of a confession will be upheld on appeal unless clearly erroneous. [Cit.]" *Bryant v. State*, 193 Ga. App. 840 (2) (389 SE2d 405) (1989). In light of the evidence presented, the court's findings were not clearly erroneous and no error occurred. See *Mims v. State*, 159 Ga. App. 712 (3) (285 SE2d 67) (1981).

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 19, 1990.

*Bates, Kelehear & Starr, Harlan M. Starr*, for appellant.
*Jack O. Partain III, District Attorney*, for appellee.